Nathan S. Morris (9431)
**CUTT, KENDELL & OLSON**
215 South State Street, Suite 900
Salt Lake City, Utah 84111
Telephone: (801) 366-9100
Facsimile: (801) 350-0065
nmorris@ckolaw.com

*Attorneys for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| JADEN BRYNER and ALEXANDRA BRYNER,<br><br>Plaintiffs,<br><br>vs<br><br>RUST-OLEUM CORPORATION; RUST-OLEUM SALES COMPANY, INC.; RPM INTERNATIONAL, INC.; RPM CONSUMER HOLDING CO.; BALL CORPORATION; and DOES 1 THROUGH 50.<br><br>Defendants. | **COMPLAINT AND JURY DEMAND (Tier III)**<br><br>Judge: Ted Stewart<br><br>Case No. 2:23-cv-00013-TS |

Plaintiff, by and through counsel, hereby complains against the Defendants and for cause of action alleges the following:

1. Plaintiff Jaden Bryner is a resident of Salt Lake County, State of Utah.

2. Plaintiff Alexandra "Ali" Bryner is the spouse of Jaden Bryner and is a resident of Salt Lake County, State of Utah.

3. Defendant Rust-Oleum Corporation is a corporation with principal offices in Vernon Hills, Illinois, that regularly causes its products to be sold, leased, and otherwise distributed in the State of Utah.

4. Defendant Rust-Oleum Sales Company, Inc. is a corporation with principal offices in Vernon Hills, Illinois, that regularly causes its products to be sold, leased, and otherwise distributed in the State of Utah.

5. Upon information and belief, Defendant RPM International, Inc. and Defendant RPM Consumer Holding Co. are Delaware companies with principle offices in the State of Ohio that are parent organization of Rust-Oleum Corporation and Rust-Oleum Sales Company, Inc., and either manufactures, sells, or otherwise distributes Rust-Oleum products, including those sold, leased, and otherwise distributed in the State of Utah.

6. The defendants listed in paragraphs 3 – 5 are collectively referred to herein as "Rust-Oleum Defendants" or "Rust-Oleum."

7. Defendant Ball Corporation is a corporation with principal offices in Westminster, Colorado, that regularly causes its products, including Rust-Oleum aerosol cans, to be sold, leased, and otherwise distributed in the State of Utah. Ball Corporation's registered agent is listed as CT Corporation System, 1108 East South Union Avenue, Midvale, Utah 84047.

8. Defendant Does 1 through 25 are persons or entities who's names or identities are not presently known to the Plaintiff, but who may be ascertained through discovery, including but not limited to other potential manufacturers of the subject Rust-Oleum product(s). To the extent it is later discovered that these Does had any involvement in the defects, negligence, or other claims alleged herein, then Plaintiffs will amend the Complaint based on the "discovery rule" or other applicable rules.

9. Does 26 through 50 are retailers, sellers, entities or individuals likely to have served roles in the supply chain between design, to delivery, and to end user. Discovery will reveal the identity of these entities or individuals at which time Plaintiffs will amend the Complaint based on the "discovery rule" or other applicable rules.

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(3). This is a civil action and involves, exclusive of interest and costs, a sum in excess of $75,000. Every issue of law and fact in this action is wholly between citizens of different states and in which citizens or subjects of a foreign state are additional parties.

11. Venue is appropriate under 28 U.S.C. § 1391(a)(2) and other applicable provisions because a substantial part of the events or omissions giving rise to this claim occurred within this district.

## FACTS

12. On the afternoon of Saturday, January 8, 2022, Plaintiff Jaden Bryner was seriously injured when an 11-ounce Rust-Oleum Metallic – Brilliant Metal Finish spray

paint can ("Rust-Oleum Can" or "Spray Can") exploded and struck his midsection resulting in surgery and permanent impairments.

13. Defendant Ball Corp. and the Rust-Oleum Defendants are the manufacturers of the Rust-Oleum Can involved in this lawsuit and any and all component parts.

14. The Rust-Oleum Defendants sell and distribute their products, including the subject Rust-Oleum Can, throughout the State of Utah and throughout the United States to be used both residentially and commercially.

15. On January 8, 2022, Jaden Bryner was preparing to perform some touch-up paint work on a vehicle in his driveway.

16. Jaden selected the Rust-Oleum Can from the storage cabinet in his garage where he kept his spray paint cans.

17. Upon information and belief, Jaden had purchased the Rust-Oleum Can in approximately 2020 or 2021.

18. The aforesaid Rust-Oleum Can had a label warning against exposing the can to temperatures above 120 degrees Fahrenheit.

19. At no time did the temperature in the area of the can exceed 120 degrees Fahrenheit.

20. At all times, Jaden had stored the Spray Can as indicated on the can and consistent with the storage methods reasonably anticipated by Defendants.

21. After selecting the Rust-Oleum Can to use, Jaden walked out of the garage to work on his project.

22. Jaden began shaking the Spray Can as indicated in the directions on the label (below).

> **Painting:** Shake can vigorously for one minute after mixing ball begins to rattle. If mixing ball fails to rattle, DO NOT STRIKE CAN. Contact Rust-Oleum. Shake often during use. Hold can upright 10-16" from surface and spray in a steady back-and-forth motion, slightly overlapping each stroke. Keep the can the same distance from the surface. Keep the can in motion while spraying. For best appearance, apply one light coat followed by one wet coat.

25. Jaden had used spray paint cans in the exact same manner on many occasions before January 8, 2022.

26. After just a few seconds shaking the Rust-Oleum Can, it violently exploded.

5

27. The bottom of the Spray Can struck Jaden in the groin and then it ricocheted into the garage, where it was located nearly 25 feet away from the location of the explosion.

 

28. Jaden fell to the ground and noticed that his sweatpants had melted away because of the explosion and he could see blood everywhere.

29. One of Jaden's testicles had come free and he observed that it was crushed, bleeding and hanging outside of the scrotum.

30. Ali Bryner was inside the Bryner home when she heard the explosion and heard Jaden screaming as she was running towards the sounds.

31. She observed Jaden lying on the ground, holding his midsection and attempting to stop the profuse bleeding.

6

32. Ali saw that there was a damaged Rust-Oleum Can on the pavement and realized that it been the cause of Jaden's injury.

33. Ali was highly concerned about additional explosions from the Rust-Oleum Can but her concern for Jaden outweighed her worries.

34. Ali immediately called 9-1-1.

35. Jaden was taken to the hospital and that evening the surgeon performed a "scrotal exploration or orchiectomy [testicle removal] left side complex wound closure."

36. The surgeon noted a "significant hematoma with completely destroyed testis."

37. As a result of the Rust-Oleum Can explosion, one of Jaden's testicles was permanently lost.

38. The surgeon told Jaden and Ali that despite his efforts, the testicle looked like a "squished grape" and could not be saved.

39. Due to her former and continued employment with the news media in Salt Lake City, Ali Bryner subsequently learned that on January 6, 2021, the Consumer Product Safety Commission (CPSC) had issued a recall for certain Rust-Oleum aerosol paint cans, particularly the "Rust-Oleum Professional Bright Galvanizing Compound" spray cans with product number 7584838 and batch code H0304A.

40. The CPSC recall indicated that "about 10,500" products were included in the recall.

41.     The CPSC recall provides: "The bottom of the pressurized container can detach unexpectedly, posing an injury hazard."

42.     The CPSC recall indicated that "The firm [Rust-Oleum] has received six reports of the container bottom detaching, including one reported injury."

43.     Plaintiffs were horrified to learn that Jaden's injury occurred in nearly the exact same manner as those other reported incidents.

44.     Yet, despite these previous incidents and despite the obvious injury hazards, the Bryners had not heard of or observed any notice or warning about the risk of the subject Rust-Oleum Can exploding or of a recall.

45.     Jaden and Ali have continued to suffer emotional trauma as a result of the Rust-Oleum Can explosion and Jaden's otherwise preventable injuries if Rust-Oleum had issued appropriate warnings and/or recalls of the product.

46.     As a result of the incident and the resulting causes of action alleged herein, including the reckless, careless, negligent, grossly negligent, and otherwise wrongful acts and omissions of each of the defendants, Plaintiffs sustained injuries resulting in economic and non-economic damages which are the subject of this Complaint.

**FIRST CLAIM FOR RELIEF**
**(Strict Product Liability – All Defendants)**

47.     Plaintiffs incorporate all preceding paragraphs and further allege the following:

48. Defendants designed, manufactured, installed, sold, promoted, tested, and/or distributed the Rust-Oleum Can, and all component parts, through the stream of commerce.

49. As retailers, sellers, distributors and/or wholesalers of the Rust-Oleum Can at issue, Defendants are jointly responsible for the manufacturers' actions and inactions in creating and placing a defective, unreasonably dangerous, and unsafe product it into the stream of commerce.

50. At the time Defendants placed the Rust-Oleum Can into the stream of commerce, it was defective and unreasonably dangerous, without limitation, as follows:

    a. Defects in the design;

    b. Defects in the manufacture;

    c. Defects in the warnings; and/or

    d. Other defects that may later be revealed during discovery.

51. More specifically, the design of the Rust-Oleum Can was defective and unreasonably dangerous because:

    a. Negligently designing and/or manufacturing the Spray Can such that it exploded or otherwise failed when used in a manner consistent with the reasonable and expected use of the product;

    b. Negligently designing and/or manufacturing the Spray Can such that the method of attaching the bottom lid to the can was defective in allowing a separation of the bottom lid of the can from the can at temperatures below the printed warning temperature of 120 degrees

    Fahrenheit;

 c. Negligently designing and manufacturing the Spray Can so as not to conform to trade standards;

 d. Negligently failing to properly inspect and/or test the Spray Can or other similar spray cans to ensure that they were safe for use by members of the general public, including Plaintiffs; and/or

 e. Defects and/or failures in the design of the Spray Can that may later be revealed during discovery.

52. The manufacture of the Rust-Oleum Can, including the component parts, was defective and made it unreasonably dangerous because Defendants:

 a. Failed to use proper materials in the manufacture and production of the Spray Can;

 b. Failed to properly assemble, install, finish, test, or inspect the Spray Can before it was placed into the stream of commerce;

 c. Failed to create, maintain and implement policies and procedures to ensure that prior to delivery into the stream of commerce, the Spray Can was safe; and/or

 d. Other defects that may later be revealed during discovery.

53. The warnings accompanying the Rust-Oleum Can were defective and made the product unreasonably dangerous because Defendants:

    a.    Negligently failing to warn users of the Rust-Oleum Can, including Plaintiffs, that the Rust-Oleum Can was likely to rupture/explode at temperatures less than 120 degrees Fahrenheit;

    b.    Negligently failing to warn users of the Rust-Oleum Can, including Plaintiffs, that the pressurized container can detach unexpectedly, and that other users had been injured while using the Rust-Oleum spray cans;

    c.    Negligently failing to warn of situations where the Rust-Oleum Can would not function properly; and/or

    d.    Other defects that may be later revealed during discovery.

54. For each of the defects and breaches as set forth above, Plaintiff Jaden Bryner sustained injuries, resulting economic damages, pain and suffering, disfigurement, and other non-economic damages.

55. Defendants acted and failed to act with a knowing indifference and reckless disregard for the rights and safety of Plaintiffs. As a result, Defendants are liable for punitive damages.

56. The defects in the Rust-Oleum Spray Can were a direct and proximate cause of the damage to Plaintiffs' marital relationship and otherwise caused mental and emotional distress to Plaintiffs.

57. Defendants are, therefore, strictly liable for the injuries and damages sustained by Plaintiffs.

## SECOND CLAIM FOR RELIEF
### (Negligence – All Defendants)

58. Plaintiffs incorporate all preceding paragraphs and further allege the following:

59. At the time Defendants placed the Rust-Oleum Can into the stream of commerce, they knew or should have known, without limitation, the following:

    a. That users of the Rust-Oleum Can, such as Plaintiffs, would be required to shake the Spray Can to use the product;

    b. That users of the Rust-Oleum Can, such as Plaintiffs, would use the product under the same or similar conditions that the Plaintiffs used the product on January 8, 2022;

    c. That users of the Rust-Oleum Can, such as Plaintiffs, would fully rely on the Spray Can to function properly and as advertised;

    d. That users of the Rust-Oleum Can, such as Plaintiffs, could not anticipate that the Spray Can would fail while using the product in these and other conditions;

60. By producing, manufacturing, distributing, and otherwise placing the Rust-Oleum Can into the stream of commerce, and with the aforementioned knowledge of potential harms, Defendants undertook a duty of care to users of the Rust-Oleum Can, such as Plaintiffs, which they breached, by and among the following:

a. Failing to ensure through policies and procedures, and other accepted industry standards, that the Rust-Oleum Can was constructed, manufactured, and distributed with adequate quality checks and controls to ensure that they were safe for use by operators and maintenance providers, such as Plaintiffs;

b. Failing to properly assemble, install, finish, test, inspect the Rust-Oleum Can before it was placed into the stream of commerce;

c. Failing to discover, correct, or repair the dangerous condition of the Rust-Oleum Can;

d. Failing to implement and conduct appropriate/adequate testing to evaluate the propensity of the Rust-Oleum Can to fail;

e. Failing to implement and conduct appropriate/adequate testing to evaluate the safety of the Rust-Oleum Can;

f. Failing to warn of the dangers associated with maintaining the Rust-Oleum Can;

g. Failing to notify distributors and sellers of the Rust-Oleum can of potential dangers and of the recall; and/or

h. Such other acts of negligence as may be revealed through discovery.

61. The aforementioned negligence was a direct and proximate cause of the Plaintiff Jaden Bryner's injuries, resulting economic damages, and his pain and suffering, disfigurement, and other non-economic damages.

62. Defendants acted and failed to act with a knowing indifference and reckless disregard for the rights and safety of Plaintiffs. As a result, Defendants are liable for punitive damages.

63. The aforementioned negligence was a direct and proximate cause of the damage to Plaintiffs' marital relationship and otherwise caused mental and emotional distress to Plaintiffs.

## THIRD CLAIM FOR RELIEF
### (Breach of Express Warranties – All Defendants)

64. Plaintiff incorporates all preceding paragraphs and further alleges the following:

65. Defendants expressly warranted that the Rust-Oleum Can was free from defects.

66. Defendants knew or should have known that the Rust-Oleum Can was unreasonably dangerous and defective and likely to cause severe injuries to users, including Plaintiffs.

67. Defendants breached their express warranties, and this breach of warranty was a proximate cause of Plaintiffs' injuries and damages.

## FOURTH CLAIM FOR RELIEF
### (Breach of Implied Warranty of Merchantability – All Defendants)

68. Plaintiff incorporates all preceding paragraphs and further alleges the following:

69. Defendants are merchants with respect to the Rust-Oleum Can and implicitly warranted that it was merchantable.

70. However, the Rust-Oleum Can was not merchantable because it contained the defects outlined above.

71. Defendants, therefore, breached the implied warranty of merchantability, and this breach of warranty was a proximate cause of Plaintiffs' injuries damages.

### FIFTH CLAIM FOR RELIEF
**(Breach of Implied Warranty of Fitness for a Particular Purpose – All Defendants)**

72. Plaintiff incorporates all preceding paragraphs and further alleges the following:

73. Defendants had reason to know (A) the particular purpose for which the Rust-Oleum Can would be used, and (B) that users of Rust-Oleum Can, including Plaintiffs, were relying on Defendants' skill and judgment to provide a suitable product.

74. Defendants implicitly warranted that the Rust-Oleum Can was fit for the particular purpose for which it was used by operators and maintenance providers, including Plaintiffs.

75. However, the Rust-Oleum Can was not fit for the particular purpose for which it was used.

76. Defendants, therefore, breached the implied warranty of fitness for a particular purpose, and this breach of warranty was a proximate cause of Plaintiffs' resulting injuries and damages.

## SIXTH CLAIM FOR RELIEF
### (Loss of Consortium and Emotional Distress and Mental Anguish)

77. Plaintiffs re-allege and incorporate by reference herein the paragraphs above.

78. Plaintiff Ali Bryner is the spouse of Jaden Bryner and therefore enjoys a legal relationship recognized by Utah Courts with respect to a loss of consortium claim as permitted by Utah Code Ann. *§ 30-2-11*.

79. Plaintiff Jaden Bryner suffered a permanent injury, disfigurement, and disability when he was injured while using the Rust-Oleum Can.

80. As a result of Jaden Bryner's injuries, Plaintiff Ali Bryner has suffered a loss of relationship, including her relational interest such as losses of Jaden's company, society, cooperation, and affection.

81. Plaintiff Ali Bryner likewise sustained mental and emotional injuries and distress as a result of the subject incident, her observation of Jaden's injuries, and her fear of further harm and injury.

## PRAYER

WHEREFORE, Plaintiffs pray for a judgment against Defendants in an amount to be determined by the trier of fact for the following damages:

1. For economic damages resulting from Defendants' actions and inactions, as set forth herein, in an amount to be alleged and proven at trial;

2. For non-economic damages resulting from Defendants' actions and inactions, as set forth herein;

3. For related consequential damages;

4. For damages associated with Plaintiffs' emotional distress and mental anguish;

5. For punitive damages;

6. For Loss of Consortium damages and mental and emotional distress; and

7. For any other further legal and/or equitable relief deemed just and proper by the court, including, without limitation, attorney fees, costs, pre- and post-judgment interest, and any other damages recoverable by law.

DATED this 6th day of January, 2023.

**CUTT KENDELL & OLSON**

*/s/ Nathan S. Morris*

Nathan S. Morris
Attorneys for Plaintiffs